# EXHIBIT 1
# (Professional Services Agreement)

# starpoint.

**STARPOINT SOLUTIONS**
**PROFESSIONAL SERVICES AGREEMENT**

This Professional Services Agreement ("Agreement") dated as of  June 2, 2017 ("Effective Date") is entered into by and between Starpoint Solutions LLC, a Yoh Services company, that is a Delaware limited liability company ("Contractor"), having a principal place of business at 22 Cortlandt Street, Fourteenth Floor, New York, NY  10007  and Trimfoot Co., LLC, having a principal place of business at 115 Trimfoot Terrace, Farmington, MO 63640 ("Client").

Whereas, Client wishes to obtain from Contractor, and Contractor wishes to provide to Client, certain services as more fully described herein.

Now, therefore, in consideration of the promises hereinafter set forth, Contractor and Client acknowledge and agree as follows:

**Section 1.**     **Scope of Services.**

Contractor shall provide to Client services of the type and at the locations and rates as agreed to and set forth in writing, signed by duly authorized officials of the parties and incorporating the terms of this Agreement, as Statement(s) of Work (hereinafter "SOW").  A form SOW is attached hereto as Exhibit A.  The terms of this Agreement shall prevail over and govern to the extent of any conflicting or inconsistent terms or conditions in any SOW or other writing or arrangement between the parties unless such SOW or other written arrangement specifically refers to the particular provision of this Agreement that it supersedes.

**Section 2.**     **Term and Termination.**

(a)  This Agreement is intended to be a master set of terms and conditions between Client and Contractor. This Agreement shall be effective upon execution hereof, and shall continue for a period of one year after the effective date, provided, however that this Agreement will automatically renew for one (1) year periods unless either party notifies the other party in writing of its desire to terminate at least thirty (30) days prior to the termination date.  Termination or expiration of a specific SOW shall not affect termination of this Agreement or other SOWs then in effect.

(b)  This Agreement and/or any services to be performed hereunder shall be terminable at any time by either party upon 30 days prior written notice.  Upon the delivery of such notice by Client, Contractor shall in consultation with Client, wind up its performance in an orderly manner, and suspend or complete particular tasks or deliverables as Client may direct, subject to Client's obligation to pay for services hereunder.

(c)  Should either party breach any term or condition of this Agreement, and thereafter fail to cure such breach within ten (10) days of receipt of written notice from the non-breaching party detailing the nature of the breach, the non-breaching party may immediately terminate this Agreement.

**Section 3.**     **Fees; Payment and Invoicing.**

(a)  The fee arrangement for a particular engagement shall be as stated in the respective SOW; if no fee arrangement is stated, the method of compensation will be on a time and materials basis.  Charges for all services performed will be invoiced monthly on actual labor hours expended at the rates set forth in the applicable SOW. Because invoices are principally based upon the number of hours worked by Contractor's personnel (hereinafter referred to as "Consultants") a weekly record of hours worked during that week will be submitted to Client. Client will have the opportunity to sign or otherwise acknowledge such weekly record / timecard to verify that such Consultants have worked the hours set forth on such weekly record / timecard. If Client fails to sign or otherwise acknowledge the weekly record /

timecard within three (3) business days, it will be presumed to be accurate and Client agrees to pay for the time indicated therein.

(b) All payments to Contractor are due within thirty (30) days of the date of the invoice from Contractor. If any payment is not received by Contractor within the due date, Contractor may at its discretion and without liability terminate or suspend any work to be performed hereunder. In addition, Contractor shall have the right to charge interest on any unpaid amount from the due date in an amount equal to the lesser of (i) 1-1/2% per month, or (ii) the maximum amount permitted by law, calculated on a daily basis.

(c) Client will reimburse Contractor for its reasonable out-of-pocket expenses incurred in the performance of the services.

(d) Any estimates prepared by Contractor for the cost of services to be provided to Client shall in no event constitute or be construed to create a fixed price agreement between the parties, unless explicitly stated in the SOW.

(e) Client shall remain responsible for the payment of all applicable federal or state sales or use taxes, or related levies and fees, attributable to the services rendered pursuant to any SOW, excluding taxes based on Contractor's net income.

## Section 4.    Independent Contractor.

(a) The parties agree that the relationship between them is that of independent contractor, and that neither party shall have any authority to represent or bind the other, and that neither party shall hold itself out or have any authority as an agent of the other for any purpose whatsoever. Nothing herein shall be construed as creating a principal and agent, partnership, joint venture, employer and employee or any other type of relationship besides independent contractor between Client and Contractor.

(b) Contractor and Client shall each remain solely responsible for the payment of all wages and benefits for each of their own respective employees, and neither party shall be responsible for the withholding or payment of any payroll deductions or taxes, or the provision of workers' compensation or unemployment insurance coverage, for or on behalf of employees of the other party or for any payment or expense in respect of claims arising under the other party's employee benefits plans.

(c) Consultants are supplied to supplement Client's own work force and Client will supervise the performance of all services performed by Consultants during the tenure of their assignment. Unless otherwise stated in a SOW, (i) Client will be responsible for the technical direction of the services performed by Consultants and (ii) Contractor will not supply persons to supervise or oversee its assigned personnel during their assignment to Client.

## Section 5.    Staffing.

(a) Client shall have the reasonable right of approval with respect to any staff proposed by Contractor to perform services hereunder.

(b) In the event any assigned Consultant fails to perform services in a manner satisfactory to Client, Client shall have the right at all times, upon written notice to Contractor, to terminate such Consultant's services to Client. If, during the first two (2) workdays of a Consultant's assignment Client becomes dissatisfied with the performance of such Consultant, Client may cancel such assignment by notifying Contractor within such time frame and Client will not be billed for the time expended by such Consultant. Once a Consultant has been on assignment for more than two (2) workdays, it is agreed that the Consultant's performance is deemed to be satisfactory and Client will pay for time expended by such Consultant as rendered. If any Consultant is removed from an assignment at the direction of Client, Contractor may refuse to assign replacement workers or assign other workers if, in Contractor's judgment, such action is legally required or advisable.

(c) The specified daily or hourly fee for a Consultant, if any, shall be set forth in the SOW and shall remain in effect for a period of six (6) months, unless another period is established in the SOW, or earlier modified by written agreement of the parties.

(d)  Any hours worked by a Consultant beyond an eight (8) hour work day shall be billed as overtime at the greater of the bill rate set forth in the SOW or what is currently mandated by applicable law.

(e)  Contractor is an equal opportunity employer, and does not discriminate against any applicant or employee on the basis of race, color, religion, sex, sexual orientation, age, national origin, handicap or disability, status as a member of the Uniformed Services or any other protected class status. Client agrees in connection with the exercise of its rights or performance of its obligations under this Agreement not to discriminate against any Consultant.

**Section 6.**      **Confidential Information.**

(a)  During the term of this Agreement, either party may receive from the other certain valuable materials, technical information and data which that party considers to be confidential and proprietary, and if disclosed, could cause irreparable harm to its business.

(b)  The parties acknowledge that, subject to the limitations set forth below, all tangible and intangible information and data (of whatever type or description, and whether or not capable of being reduced to a written form) provided by one party (the "Provider") to the other party (the "Recipient"), at any time and for any purpose is confidential, proprietary and a trade secret of the Provider and/or its clients ("Information"). Such information may include, but is not limited to, data related to (i) the Provider, its clients or potential clients; (ii) software development projects; (iii) business practices; (iv) programming utilities, which the Provider considers to be confidential and proprietary; (v) information regarding the Provider's client relationships; (vi) information about the Provider's employees; (vii) information about any confidentiality or non-disclosure agreements which the Provider may have with other firms and any information resulting from these agreements.

(c)  During the term of this Agreement and for a period of not more than five (5) years from the date of expiration or termination hereof, (i) the Recipient will take such steps as may be reasonably necessary to prevent disclosure of information to others and to ensure that such information is disclosed only to service providers of the Recipient who need to know such information in the course of performing activities under this Agreement or as provided in other agreements between the parties; (ii) information disclosed by the Provider is and will remain the property of the Provider; and (iii) the Recipient shall notify the Provider immediately of any loss or misplacement of the Provider's information.

(d)  Without the prior written consent of the Provider, the Recipient shall not (i) disclose to any third party the fact that the Provider has provided any information to the Recipient; (ii) disclose to any third party any or all of the information disclosed by the Provider; (iii) permit any such third party to have access to such information; or (iv) use such information for any purpose other than as permitted under this Agreement.

(e)  The Recipient's obligation regarding the information shall not apply to information which (i) was in the public domain at the time of disclosure of it to the Recipient by the Provider, whether or not such disclosure predates this Agreement; (ii) was, prior to its disclosure, in the Recipient's possession or known to the Recipient free of any obligation; (iii) is or becomes public knowledge by acts other than the Recipient's after receiving it; (iv) is or becomes available to the Recipient from another source lawfully possessing and entitled to disclose such information; (v) the Recipient is under a legal obligation to disclose pursuant to an order of any court or like entity, provided that the Recipient shall provide the Provider with prompt notice of such request or order, including copies of subpoenas of order requesting the information, cooperate reasonably with the Provider in resisting the disclosure of the information via a protective order or other appropriate legal action, and shall not make disclosure until the Provider has had a reasonable opportunity to resist such disclosure, unless the Recipient is ordered otherwise.

(f)  Upon demand by the Provider or upon termination of the contractual relationship between Contractor and Client, the Recipient shall return and deliver to the other party any and all information then in its possession or otherwise subject to its actual constructive possession, custody, or control, including, but not limited to any copies, summaries, compilations, or analyses thereof, in whatever form maintained or derived.

Section 7.     Rights in Work Product.

(a)  Contractor agrees to promptly report any concepts, inventions, discoveries, ideas, patents, data, trademarks, copyrights, and works of authorship and the like which are developed or arise from the services performed hereunder to Client.  All concepts, inventions, discoveries, ideas, patent rights, data, trademarks, works of authorship, and copyrights which are related to, arise out of, or in connection with Contractor's work product shall be the exclusive property of, and all ownership rights shall vest in Client.  Contractor agrees to sign all necessary documents or take such other actions, at Client's sole cost and expense, as Client may reasonably request in order to perfect any and all such rights.

(b)  Notwithstanding anything to the contrary herein, any software and/or programming components which are (i) developed or acquired by Contractor prior to the Effective Date of this Agreement, or (ii) developed or acquired by Contractor after the Effective Date of this Agreement, but which constitute non-business specific programming tools or utilities having generic application outside Client's scope of business on the Effective Date of this Agreement, shall constitute the proprietary property of Contractor.

(c)  To the extent that Contractor includes any of its proprietary property as a component in any Client application, Contractor hereby grants to Client without restriction or further payment with respect thereto, the right and perpetual license to use, reproduce, prepare derivative works, distribute copies, publicly demonstrate, and/or display such Contractor Proprietary Components as Client sees fit.  Contractor shall not use any of its proprietary property as a component in any Client application without Client's prior written consent.

(d)  The provisions of this Section 7 shall survive termination of this Agreement.

Section 8.     Warranties.

(a)  Contractor represents, warrants and covenants that (i) it has full, right and authority to enter into this Agreement; (ii) the work to be performed hereunder by Contractor will be performed consistent with generally accepted industry standards; (iii) its execution and performance of this Agreement will not violate any agreement to which it is a party or by which it is bound and (iv) Contractor will perform all work called for by this Agreement in compliance with applicable laws.  This warranty shall be valid for thirty (30) days from the performance of the particular service to which this warranty applies.

(b)  The warranties provided above are exclusive and in lieu of all other warranties whether express or implied, including, without limitation, the implied warranties of merchantability and fitness for a particular purpose.  Because Contractor is not engaged to provide Client with a specific design, engineering, system concept or solution to a particular problem, it does not warrant or guarantee that the services or deliverables will produce a technical solution to Client's particular problem or need.  Rather, Consultants are provided to augment Client's existing technical capabilities to perform such technical services as Client directs.

(c)  Client represents, warrants and covenants that:  (i) Client has full right and authority to enter into this Agreement; (ii) it will not use any deliverable or other material provided hereunder in any manner which is in violation of any law or any governmental regulation; and (iii) Client shall obtain any and all rights and licenses for any third party data, products and/or intellectual property required by Contractor to provide and/or perform services under this Agreement.  If Consultants' services are performed at Client's offices, Client shall provide office space and facilities to Consultants commensurate with (1) those provided to its own employees, and (2) the nature of the services to be rendered by such Consultants.

(d)  Neither party shall be liable to the other party for any special, indirect, incidental or consequential damages, including without limitation, damages for loss of business, profit(s), revenues, and/or data however arising whether or not such party has been advised of the possibility of such damages and even if a remedy set forth herein is found to have failed of its essential purpose.  Contractor's liability for damages hereunder shall in no event exceed the amount of fees paid by Client to Contractor for the services rendered hereunder.

**Section 9.**        **Indemnification.**

(a)  Except to the extent that any such action, suit, proceeding, claim, expense, cost or liability derived from a third party claim ("Losses") arises out of or results from Client's negligence or illegal act or omission, Contractor shall defend and indemnify Client from and against any and all Losses arising from or out of: (i) the negligence or illegal act or omission of Contractor or (ii) infringement of the intellectual property rights of a third party by Contractor. Notwithstanding the foregoing, Contractor shall have no liability for any claim of infringement to the extent based on (x) the combination, operation or use of deliverables with software, services or equipment not furnished by or otherwise specifically identified to Contractor; if such infringement would have been avoided by the use of the deliverables without such software, services or equipment, (y) Client's use of the deliverables in conjunction with Client's data where the use with such data gave rise to the infringement claim, or (z) Client's modification or configuration of the deliverables in a manner not required or instructed by Contractor, if such infringement would have been avoided by the use of the deliverables without such modifications or configuration.

(b)  Contractor's duties to indemnify shall only arise if (i) Client promptly notifies Contractor in writing after Client's receipt of notification of a potential claim; (ii) Contractor may assume sole control of the defense of such claim and all related settlement negotiations; and (iii) Client provides Contractor, at Contractor's request, with the assistance, information and authority necessary to perform Contractor's obligations under this Section.

**Section 10.**        **Insurance.**

(a)  Contractor shall maintain insurance coverage as follows:

1.  Worker's Compensation Insurance in accordance with the statutory requirements of the state(s) in which service is to be performed.

2.  Comprehensive General Liability Insurance with at least One Million Dollars ($1,000,000) combined single limit for bodily injury and property damage per each occurrence.

(b)  Contractor shall provide Client with written evidence of the existence and maintenance of such insurance policies upon Client's request.  If any of such insurance policies are to be canceled during the term of this Agreement in a way that would materially affect the coverage required hereunder, Contractor shall provide written notice to the Client at least thirty (30) days prior to such cancellation.

**Section 11.**        **Non-Solicitation.**

(a)  Client agrees that unless a Consultant is identified as a "Right to Hire Candidate" in an SOW, it will not hire, solicit, encourage or induce any Consultant (including Contractor's employees and contractors) who provides services hereunder to leave Contractor's employment or otherwise cease to perform services for Contractor during the time that such individual provides services hereunder and for a one (1) year period thereafter.  Additionally, Client agrees that it will not hire, solicit, encourage or induce any candidate who is presented by Contractor to Client or introduced by Contractor to Client pursuant to this Agreement to leave Contractor's employment or otherwise cease to perform services for Contractor for a one (1) year period after such introduction or presentation.

(b)  Consultants identified as "Right to Hire Candidates" may be hired by Client upon payment of the conversion fee set forth in Exhibit B attached hereto, or such conversion fee as may be set forth in the applicable SOW.

**Section 12.**        **Miscellaneous.**

(a)  Assignment.  Neither party may assign this Agreement without the written consent of the other party; provided that either party may assign or delegate this Agreement to any acquirer of all or of substantially all of its equity securities, assets or business relating to the subject matter of this Agreement.  Any attempted assignment or delegation in violation of this section shall be void and without effect.  Subject to the foregoing, this Agreement will benefit and bind the parties' successors and assigns.

(b)  Severability.  In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

(c)  Force Majeure.  Except for payment obligations for products or services received, neither party will be responsible for performance of its obligations hereunder where delayed or hindered by war, riots, embargoes, strikes or acts of its vendors, suppliers, accidents, acts of God, or any other event beyond its reasonable control.

(d)  Notices.  All notices required to be sent hereunder shall be in writing and shall be deemed to have been given upon (i) the date sent by confirmed facsimile, (ii) on the date it was delivered by courier, or (iii) if by certified mail return receipt requested, on the date received, to the addresses set forth above and to the attention of the signatory of this Agreement, with a copy delivered to the attention of each party's legal department or to such other address or individual as the parties may specify from time to time by written notice to the other party.

(e)  Amendment and Waiver.  Except as otherwise expressly provided herein, any provision of this Agreement may be amended or modified and the observance of any provision of this Agreement may be waived (either generally or any particular instance and either retroactively or prospectively) only with the written consent of the parties.  The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights.

(f)  Signatures.  This Agreement may be executed in separate counterparts including facsimile copies, each of which shall be deemed an original, and all of which shall be deemed one and the same instrument and legally binding upon the parties.

(g)  Complete Agreement.  This Agreement, including the Exhibits attached hereto and made part hereof, constitute the entire agreement between Client and Contractor with respect to the subject matter hereof.  This Agreement supersedes all prior agreements or discussions, whether written or oral.  In the event of any inconsistency between the terms of this Agreement and the terms of any Exhibit, the terms of this Agreement shall govern except as otherwise stated therein or herein.

(h)  Governing Law.  This Agreement and all matters relating to this Agreement shall be construed and controlled by the laws of the State of New York as applied to agreements executed and performed entirely in New York by New York residents, without reference to its conflict of law principles.  The parties expressly exclude the applicability of the United Nations Convention on the International Sale of Goods.

(i)  Submission to Jurisdiction; Service of Process; Forum.  Each of the parties irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement may only be instituted in the Federal courts of the United States for the Southern District of New York; provided that if for any reason the Federal courts of the United States for the Southern District of New York will not or cannot hear any such action or proceeding, it may only be brought and enforced in the Supreme Court of the State of New York sitting in the county of New York.  Each of the parties irrevocably submits to the jurisdiction of such U.S. Federal courts and, to the extent set forth in the preceding sentence, of such New York State courts, in any such action or proceeding.  The parties agree that final judgment against it in any legal action or proceeding arising out of or relating to this Agreement shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law, a certified copy of which judgment shall be conclusive evidence thereof and of the amount of its indebtedness, or by such other means provided by law.

(j)  Waivers of Jury Trial.        Each of the parties hereby irrevocably and unconditionally waives trial by jury in any legal action or proceeding relating to this agreement and for any counterclaim therein.

(k)  Export Controls.  Each of the parties hereto shall comply with all applicable export laws, restrictions, national security controls and regulations of the United States and all other applicable foreign agencies and authorities, and shall not export or re-export, or allow the export or re-export of any deliverable or any copy, portion or direct product thereof in violation of any such restrictions, laws or regulations.  Client shall obtain any necessary licenses and/or exemptions with respect with from the U.S. of all materials or items deliverable by Contractor and upon request by Contractor shall demonstrate to Contractor compliance with all such applicable laws and regulations prior to delivery thereof by Contractor.

(l)   Attorney's Fees.   If it becomes necessary for either party to institute any legal action against the other party, the prevailing party in such action shall be entitled to its reasonable attorney's fees and costs.   For the purposes of this section: (a) attorney's fees shall include, without limitation, fees incurred in the following: (1) postjudgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third-party examinations; (4) discovery; and (5) bankruptcy litigation; and (b) prevailing party shall mean the party which is determined in the proceeding to have prevailed or which prevails by dismissal, default or otherwise.

(m)   Effect of Termination.   The parties' obligations under this Agreement that by their nature continue beyond termination, cancellation or expiration of this Agreement shall survive termination, cancellation or expiration of this Agreement.

(n)   Headings.   Headings and captions are for convenience only and are not to be used in the interpretation of this Agreement.

(o)   Construction.     This Agreement has been prepared jointly and shall not be strictly construed against either party hereto.

(p)   Allocation of Risk.   The sections on limitation of liability, warranty and warranty disclaimer allocate the risks in the Agreement between the parties.   This allocation is an essential element of the basis of bargain between the parties.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement in one or more counterparts as of the date first written above.

**STARPOINT SOLUTIONS LLC**

By: _*Mitchell Fass*_

Name: _Mitchell Fass_

Title: _EVP - ERP Group_

Date: _6/2/17_

_Trimfoot Co., LLC_

(Client)

By: _J. H. Scott_

Name: _Joe H. Scott_

Title: _Manager/Owner_

Date: _6/9/17_

**Exhibit A**

## STARPOINT SOLUTIONS LLC
Statement of Work (SOW)

Dated: _____, 20___

Client Name: _____

1. CONSULTANT: _____

2. START DATE: _____

3. SERVICES: _____

4. SERVICE LOCATION: _____

5. RATE SCHEDULE:   $ _____ OT: $ _____

6. RIGHT TO HIRE CANDIDATE

   The Consultant identified above (check one)
   ☐ is a Right to Hire Candidate
   ☐ is *not* a Right to Hire Candidate

NOTE:   This Statement of Work is governed by the terms of a Professional Services Agreement dated _____, 20___ between Starpoint Solutions LLC and _____ ("Client").

IN WITNESS WHEREOF, the parties have executed this Statement of Work as of the first date written above.

**STARPOINT SOLUTIONS LLC**                    Trimfoot Co, LLC

By: _*signature*_                         (Client)

Name: _Mitchell Fuss_          By: _*signature*_

Title: _EVP - ERP Group_       Name: _Joe H. Scott_

Date: _6/2/17_                 Title: _Manager / Owner_

                               Date: _6/9/17_

## Exhibit B

### RIGHT TO HIRE

(A) If identified as a "Right to Hire Candidate" in the applicable SOW, Client may hire Contractor's personnel upon the payment of a "conversion fee" as determined below. The conversion fee is determined by a sliding scale based upon the total tenure of Contractor's personnel with Client.

| Contractor's Personnel Tenure on Client Assignment (in Days) | Fee Based On Percentage of First Year's Base Salary |
|---|---|
| Day 1 through 90 | 20% |
| 91 through 180 | 15% |
| 181 through 270 | 12% |
| 271 through 365 | 9% |
| after 365 | 5% |

If service is not continuous, then it shall be accumulated on an annual basis, unless 2 months or more passes between service periods, at which time tenure is reset to 0.

(B) The "conversion fee" shall be calculated using the table above and the initial salary of such Contractor's personnel at Client.  This fee structure may not be amended by any contract assignment or by any course of conduct, but rather, any amendment shall require a formal, written document executed by the authorized representatives of both parties expressly amending this fee arrangement.

# TRiMFOOT Co., LLC



ERP Project Planning Engagement:

Trimfoot Co., LLC

Statement of Work

**June 2, 2017**

Presented by:

**Mayda Barsumyan**

Vice President / Oracle Practice

Starpoint Solutions

314.761.9054

mbarsumyan@starpoint.com

**Mitchell A. Fass**

Executive Vice President/ ERP Practice Partner

Starpoint Solutions

732.744.3157

mfass@starpoint.com

Trimfoot Co., LLC Planning Engagement: SOW



# Table of Contents

Purpose.................................................................................................................3
    Statement of Understanding...............................................................3
    Project Description / Deliverables......................................................4

Pricing and Payment Scheduling .................................................................6

Assumptions .......................................................................................................7
    Project Assumptions.............................................................................7
    Staffing Assumptions...........................................................................7

About Starpoint ..................................................................................................9

Statement of Work Signoff Form ................................................................11

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas
may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# Purpose

## Statement of Understanding

Trimfoot Co., LLC, an industry leader for over 100 years is dedicated to providing fashionable, quality footwear for the infant, children, women, and dance markets. Trimfoot is looking to streamline and automate all accounting processes.

Trimfoot Co., LLC has requested that Starpoint Solutions provide a Statement of Work (SOW) for the next step of their strategic ERP initiative – the Planning of the rollout of new cloud based ERP system. This engagement is to make recommendations and create a Project plan with a primary focus on what can be implemented in 2017. Recommendations may include the implementation of modules not yet procured by Trimfoot Co., LLC. Starpoint will review Trimfoot Co. LLC's Roadmap and implement a new ERP Solution. This will include Trimfoot Co., LLC's:

- Processes
- Data Management Requirements
- System Functional requirements

Starpoint will work with and interview key Trimfoot Co., LLC personnel to validate the proper insights as to Project Charter, which includes priorities from both a systems and business process perspective.

The Project is to start immediately. Phase I review and evaluation to be completed by June 30, 2017 and Phase II implementation of the ERP on cloud solution must be completed by no later than December 31, 2017.

Starpoint will commence the Planning project with the mindset of "no" modifications to the chosen software. The implementation of the "vanilla" software is always recommended, as modifications can have a downstream adverse effect on the systems from the perspective of creating upgrade issues. These issues can add ongoing project cost. Part of the Planning project is to determine how to implement your business processes 'within' the chosen software. The software does not typically meet 100% of your business needs 'out of the box.' There are ways to customize the software to meet one's business objectives, and not impact 'source code' (not creating modifications), thereby not affecting you, the client, from future upgrade issues.

As a very senior ERP consultancy, we understand exactly how to plan appropriately for such issues. Starpoint wants to be a Trusted Partner to Trimfoot Co., LLC. Creating and recommending the best business systems processes and a detailed project plan for Trimfoot Co., LLC is what we will do, as we take our over 25 years of ERP experience as an organization and provide the most efficient, effective, and quality plan possible.

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# Project Description / Deliverables

**Objectives:**

This document outlines the Project Planning for Trimfoot Co., LLC ERP applications, and clearly defines the responsibilities of Starpoint and Trimfoot Co., LLC ERP implementation participation. Its intent is to ensure a "no surprises" approach to the overall management of this Project. Any changes to the Statement of Work (SOW) shall be agreed upon by both Trimfoot Co., LLC and Starpoint project management. All changes will be handled through project change requests.

Our intent in this document is to establish a framework for the relationship between Trimfoot Co., LLC and Starpoint, to our mutual benefit. This partnership could not be better ensured than by a successful project.

A successful Planning project will provide Trimfoot Co., LLC with the information required to render a clear and accurate decision in regards to moving forward with the subsequent execution, or implementation, of new on Cloud ERP. This is analogous to creating a **Business Case** for Trimfoot Co., LLC. Starpoint Solutions knows this effort is of paramount importance and conducts Planning engagements with the utmost level of professionalism in the industry.

Planning criteria:

- Review Trimfoot Co., LLC's Business Roadmap, and speak with key Trimfoot Co., LLC personnel affecting all business areas
- Review Trimfoot Co., LLC existing Financials systems implementation configuration, etc. to streamline the plan for future on Cloud ERP systems integration/rollout
- Partner with Trimfoot Co., LLC and bring ERP core competencies for strategic planning and to plan execution
- Provide advice on business processes
- Provide advice on ERP modules that need to be implemented, with a planning focus on 2017. If modules are recommended that Trimfoot Co., LLC does not own the licenses to, Starpoint will provide a business justification and listing of Pros and Cons of such module(s)
- Create Project Plan (.MPP format) that will accomplish Trimfoot Co., LLC's 2017 ERP systems objectives, identifying resources (Trimfoot Co., LLC and external Consulting) over time, and cost

Additionally, Starpoint will provide:

- **Executive Summary** document will include the following sections:
  - **Application Evaluation** – This will help you to evaluate your current applications utilization in regards to your business needs
  - **Define Business pain points and issues** – Provide analysis on existing business issues and align resolution to the best implementation solution

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



- **Upgrade Customization/Migration Issues** – We will analyze the existing systems to note *if* there are any customizations and/or any major data migration and interface issues. This includes such issues as data conversion, legal requirements, training, and security. The need for Customizations will be analyzed versus functionality that is satisfied by the out of the box, vanilla software. This will be done at a detailed level with an eye towards taking advantage of new standard functionality, eliminating modifications, minimizing customizations, and maintaining what's necessary from a business perspective

- **Objectives** – We will clearly define what success is for the project. Established goals, priorities, and strategic objectives must be clearly articulated

- **Business Drivers** – We will document the major factors and major influences driving this project

- **Assumptions/Risks** – We will define both the functional and the technical assumptions of this effort, as well as identify the risks with their associated impact, probability, and how to mitigate the risks

- **Scope** – We will produce a high-level scoping document defining the project's parameters. This includes the project approach, target dates, and constraints

- **Roadmap** – This will be a Microsoft Office Project Plan and contain all phases and activities for the subsequent implementation

- **Resource Plan** – This plan will help you with any training or hiring needs

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# Pricing and Payment Scheduling

In this spirit of partnership, Starpoint is offering the following discounted pricing to Trimfoot Co., LLC. For a planning engagement such as this, we feel that onsite presence and support are crucial at the outset of the project.   There are unknown variables, which might warrant more versus less onsite participation.

We are very confident in our ERP, SME capabilities, and planning resources capabilities.   With a newly acquired company, we are also sensitive to financial considerations, and for that reason want to offer Trimfoot Co., LLC highly discounted rate. Our option is Time and Materials based hourly rate plus expenses.  Due to the seniority of our resources, we believe that it will not be essential for you to require them to be onsite five days a week for the project duration. However, we want this to be your decision, and we are fully prepared to be onsite full time.

That being stated, we are willing to be flexible and discuss this with you. The price for this time and materials based consulting work described in this Statement of Work is set at an hourly rate of $165.00 per hour plus actual expenses.

Some Corporations are able to categorize consulting expenses differently (i.e. capitalize) and account for this separately, making the hourly rate plus expenses option more attractive.   Plus, we are offering you the flexibility to minimize travel.

Payment terms will be described in a mutually agreed upon Professional Services Agreement.

This document contains the confidential information of Starpoint Solutions LLC.  No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# Assumptions

The following section defines the overall assumptions as agreed to by both Trimfoot Co., LLC and Starpoint project management regarding successful completion of this ERP Project Planning SOW.

## Project Assumptions

- The project resources (Trimfoot Co., LLC and Starpoint) will be at Trimfoot Co., LLC location. The Starpoint teams' work will be performed onsite and offsite, at the discretion of Trimfoot Co., LLC.
- Trimfoot Co., LLC will provide adequate workspace and facilities for the Starpoint project team while onsite. Adequate workspace and facilities include providing each Starpoint consultant with access to desk space, telephone, PC with Microsoft Windows and Office software, access to other required equipment (Faxes, copiers, analog modem line, etc.) and reasonable office supplies
- Trimfoot Co., LLC will provide each Starpoint full-time consultants with a workstation connected to the Trimfoot Co., LLC network and ERP Applications environment for Starpoint consultant's use
- Trimfoot Co., LLC will ensure that key subject matter experts are available to support Starpoint consultants and respond to inquiries in a timely manner

## Staffing Assumptions

**Trimfoot Co., LLC Team will:**

- Coordinate all Trimfoot Co., LLC resources
- Work closely with the Starpoint resource to ensure the Project Planning is in accordance with the desired results
- Act as the key contact regarding the hosted technical architecture
- Provide technical information regarding customizations, data, and reports where required
- Provide documentation, guidance, and information regarding Trimfoot Co., LLC's ERP Roadmap, which will include existing processes and reporting needs
- Meet with Starpoint consultants to discuss Trimfoot Co., LLC's current ERP Financials Business Processes and Procedures

Trimfoot Co., LLC Planning Engagement: SOW



### Starpoint Solutions

*Starpoint Solutions:  Solutions Architect / SME and Systems Analyst/ Project Planner*

These 2 resources will provide the following:

- Provide overall project support and analysis
- Provide ERP SME
- Provide ERP experts – knowledgeable and experienced in current ERP
- Coordinate functional and technical ERP workshop schedules
- Provide deliverables
- Perform ERP module evaluation
- Review ERP Business Roadmap, and speak with key Trimfoot Co., LLC personnel affecting all business areas
- Review Trimfoot Co., LLC Financials system implementation configuration, etc. to streamline plan for future ERP systems integration/rollout
- Partner with Trimfoot Co., LLC and bring the right ERP core competencies for strategic planning and to plan execution
- Offer advice on business processes
- Offer advice on ERP modules that need to be implemented, with a planning focus on 2017.  If modules are recommended that Trimfoot Co., LLC does not own the licenses to, Starpoint will provide a business justification and listing of Pros and Cons of such module(s)
- Validate the preliminary results and present the Project deliverables  to the appropriate persons
- Create a Project Plan (.MPP format) that will accomplish Trimfoot Co., LLC 2017 ERP systems objectives, identifying resources (Trimfoot Co., LLC and Starpoint) over time, and cost
- Present final deliverables to Trimfoot Co., LLC Management at project conclusion

This document contains the confidential information of Starpoint Solutions LLC.  No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# About Starpoint

Since 1982, Starpoint Solutions has been a trusted source of human capital and solutions to help clients supplement their staff, build their project teams, and outsource their projects. We'll quickly find the talent you need to grow your business, improve performance, and increase profitability.

Starpoint has 1000 professionals whose sole goal is to partner closely with our clients and candidates to solve their needs and ensure their complete satisfaction.

Our firm has two main practice areas – Solutions and Staffing – which both revolve around our core competency: expert human capital.

**Facts & Stats**
Founded in: 1982
Ownership: privately held
Employees: 1000
Headquarters: NY
Offices: 15 Globally, with 13 nationwide

**Visit Our Site**
www.starpoint.com

**Follow Us Online**
twitter.com/starpoint_jobs
twitter.com/starpoint_llc
facebook.com/StarpointSolutions
linkedin.com/company/starpoint-solutions

Starpoint possesses extensive expertise in the evaluation, implementation, and upgrade of ERP systems, specifically Oracle, PeopleSoft, and SAP in the areas of Financial, HR, Benefits & Payroll, Distribution, SCM/ Manufacturing, and GRC software. In addition, we build financial Data Warehouses; front-end them with financial analysis tools and make them web enabled. We can handle an entire upgrade or augment a project team, providing selected, specialized functional or technical expertise.

Starpoint has experience in integrating best-of-class open and scalable architectures.  Starpoint's experience with back-office business and operational processes, as well as its expertise in web design, distance learning software, middleware technologies, software package selection and integration, plus other software packages (ERP, CRM, etc.), will ensure that the best combination of technologies is recommended and implemented.

This document contains the confidential information of Starpoint Solutions LLC.  No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



## Seasoned Business Professionals

Starpoint has expert systems and management consulting professionals. We help you make informed business decisions, and help you deliver on those decisions by:

- Analyzing the gap between a package's capabilities and your organization's needs
- Understanding your company's current and future state environment
- Projecting total project cost for standard and tailored upgrades
- Determining whether a package is flexible enough to meet tomorrow's changing technical environment
- Incorporating relational- or object-oriented modeling and design, if needed
- Planning for software upgrades and migration
- Implementing a solution using our proven methodologies, support tools, and techniques

## Our Value proposition is plain and simple

We aim to provide senior level, experienced consultants who have an immediate and positive impact on our client's business, while providing the highest value delivered at the lowest total cost to the client.

## Our Commitment to You, Our Client

Starpoint's clients have come to expect the highest level of commitment from our professionals.

This commitment includes:

- Providing a high level of executive participation to ensure high quality and effective services
- Continual monitoring and awareness of project status as a check and balance on work in progress
- Strong internal and external communications, ensuring the ability to anticipate problems and develop early solutions
- Strong project management roots that allows for the controlled, cost-effective implementation and rollout of packaged and custom software suites
- Continued involvement after project completion to assure the client of success in achieving their long-term strategies and objectives

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint  © Starpoint Solutions LLC

Trimfoot Co., LLC Planning Engagement: SOW



# Statement of Work Signoff Form

The undersigned have reviewed the preceding document and agree to proceed with the project as described herein.

Signed: _____    Date: 6/9/17
         Joe H. Scott
         Manager / Owner
         Trimfoot Co., LLC

Signed: _____    Date: 6/2/17
         Mitchell A. Fass
         Executive Vice President
         Starpoint Solutions, LLC

This document contains the confidential information of Starpoint Solutions LLC. No part of this document or its ideas may be disclosed or reproduced in any form without the written consent of Starpoint © Starpoint Solutions LLC